UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- x
SAMANTHA LOPEZ, *on behalf of herself, FLSA* :
*Collective Plaintiffs, and the Class*, :
: 
                                     **Plaintiff,** :      22-CV-4271 (ALC)
:
          -against- :      **OPINION AND ORDER**
:
LIDL US, LLC *d/b/a Lidl*, :
:
                                      **Defendant.** :
------------------------------------------------------------- x

**ANDREW L. CARTER, JR., United States District Judge:**

      Plaintiff Samantha Lopez ("Plaintiff" or "Lopez"), on behalf of herself and others similarly situated, brings this suit against Lidl US, LLC ("Defendant" and "Lidl") for unpaid wages, including overtime premiums due to time-shaving pursuant to the Fair Labor Standards Act, 29 U.S.C. §§ 201, *et seq*. ("FLSA") and New York Labor Law ("NYLL"). Lidl now moves to compel arbitration of Plaintiff's claims on an individual basis. For the reasons that follow, Defendant's motion is **GRANTED**.

## BACKGROUND

### I. Factual Background

#### A. Plaintiff's Claims

      Lidl owns and operates a chain of supermarkets and operates approximately 24 stores in New York. (Compl., ECF No. 1 ¶ 1.) In December 2018, Lopez was hired by Defendant as a store associate at a Lidl store located at 283 Platinum Ave. on Staten Island. (*Id.* ¶ 26.) She worked at this location until approximately mid-2019. (*Id.*) She was subsequently rehired in the same position at the same Staten Island store in November 2020. (*Id.*) Plaintiff maintains that she also worked at other Lidl locations, until she was terminated by Defendant in January 2021. (*Id.*)

1

Plaintiff alleges that she, and other similarly situated employees, were forced to work through lunch and past their regularly scheduled shifts. (*Id.* ¶¶ 27–30.) She alleges that her weekly paycheck was "shaved" by approximately two hours per week. (*Id.* ¶ 31.)

### B. The Offer Letters

As evidence of the parties' agreement to arbitrate, Defendant has proffered two offer letters, which it contends constitute enforceable arbitration agreements governing Plaintiff's claims. The first offer letter was extended to Lopez electronically through Lidl's human resources portal on November 8, 2018. (Harry Decl., ECF No. 13 ¶ 5; *id.*, Ex. A., ECF No. 13-1.) The offer letter invites Plaintiff to work for Lidl as a part-time employee, paid at a rate of $15.25 per hour. (*Id.* at 1.) The letter indicates that Plaintiff was being offered employment as an "at will" employee and states that it "summarizes some of the important aspects of your proposed employment with Lidl US Operations." (*Id.*) Germane to the dispute at issue, the letter outlines Lidl's arbitration policy as follows:

> "This offer is also contingent on your written acceptance of the Company's Arbitration Agreement. By executing the arbitration agreement, you and the Company agree that all disputes hereunder shall be exclusively resolved by final and binding arbitration in Arlington, Virginia or the state and county of your primary employment at the time of the act giving rise to the dispute if agreed to by both you and the Company. The arbitration will be conducted in accordance with the Employment Arbitration Rules & Mediation Procedures of the American Arbitration Association (AAA). However, nothing herein shall prevent you from filing and pursuing proceedings with applicable federal, state or local administrative agencies. You specifically understand that by agreeing to arbitrate, you waive any right to trial by judge or jury in favor of having such disputes resolved by arbitration."

(*Id.* at 2.) Plaintiff electronically accepted the terms of the offer letter on November 9, 2018. (*Id.*, Ex. B, ECF No. 13-2.)

A second offer letter was extended to Lopez on October 7, 2019, which contains the same language regarding the agreement to arbitrate as the first offer letter. (*Id.*, Ex. C, ECF No. 13-3 at 2.) Lopez electronically accepted the terms of the offer letter on October 7, 2019. (*Id.*, Ex. D, ECF No. 13-4.)

## II.     The Motion to Compel Arbitration

Defendant filed the instant motion to compel arbitration on July 22, 2022, arguing that the arbitration clauses in the offer letters constitute valid and enforceable arbitration agreements. (*See generally* Def.'s Mem., ECF No. 14.) Plaintiff filed her opposition on August 5, 2022, arguing that (1) the offer letters do not contain a clear and unequivocal arbitration agreement; (2) the offer letters are merely informational and disclaim any contractual nature; (3) the arbitration agreement requires written acceptance; (4) any agreement to arbitrate would not cover Plaintiff's claims; and (5) Defendant does not meet its burden of proof. (*See generally* Pl.'s Mem., ECF No. 21.) Defendant filed a reply memorandum on August 19, 2022. (ECF No. 27.)

## STANDARD OF REVIEW

The Federal Arbitration Act ("FAA") governs arbitration agreements. *See* 9 U.S.C. § 2. There is "a strong federal policy favoring arbitration as an alternative means of dispute resolution." *Ragone v. Atl. Video at Manhattan Ctr.*, 595 F.3d 115, 121 (2d Cir. 2010) (internal quotation marks and citations omitted); *see also Arciniaga v. Gen. Motors Corp.*, 460 F.3d 231, 234 (2d Cir. 2006) ("[I]t is difficult to overstate the strong federal policy in favor of arbitration, and it is a policy we have often and emphatically applied." (internal quotation marks and citations omitted)).

"In deciding whether claims are subject to arbitration, a court must consider (1) whether the parties have entered into a valid agreement to arbitrate, and, if so, (2) whether the dispute at issue comes within the scope of the arbitration agreement." *In re Am. Exp. Fin. Advisors Sec.*

3

*Litig.*, 672 F.3d 113, 128 (2d Cir. 2011). The moving party must "mak[e] a *prima facie* initial showing that an agreement to arbitrate existed," and if the movant satisfies its burden "by a showing of evidentiary facts," then the burden shifts to the non-movant to show the agreement is invalid or inapplicable. *Marcus v. Collins*, No. 16-CV-4221, 2016 WL 8201629, at *7 (S.D.N.Y. Dec. 30, 2016) (internal quotation marks and citations omitted).

In reviewing a motion to compel arbitration, "the court applies a standard similar to that applicable [to] a motion for summary judgment." *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003). For this reason, "it is proper (and in fact necessary) to consider…extrinsic evidence when faced with a motion to compel arbitration." *BS Sun Shipping Monrovia v. Citgo Petroleum Corp.*, No. 06-cv-839 (HB), 2006 WL 2265041, at *3 n.6 (S.D.N.Y. Aug. 8, 2006) (citing *Sphere Drake Ins. Ltd. v. Clarendon Nat. Ins. Co.*, 263 F.3d 26, 32-33 (2d Cir. 2001)). "If the party seeking arbitration has substantiated the entitlement by a showing of evidentiary facts, the party opposing may not rest on a denial but must submit evidentiary facts showing that there is a dispute of fact to be tried." *Oppenheimer & Co. v. Neidhardt*, 56 F.3d 352, 358 (2d Cir. 1995); *accord Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 113 (2d Cir. 2012) ("Allegations related to the question of whether parties formed a valid arbitration agreement…are evaluated to determine whether they raise a genuine issue of material fact that must be resolved by a fact-finder at trial."). "If the Court determines "that an arbitration agreement is valid and the claim before it is arbitrable, it must stay or dismiss further judicial proceedings and order the parties to arbitrate." *Patterson v. Raymours Furniture Co.*, 96 F. Supp. 3d 71, 75 (S.D.N.Y. 2015), *aff'd*, 659 F. App'x 40 (2d Cir. 2016) (citing *Nunez v. Citibank*, N.A., No. 08–CV–5398 (BSJ), 2009 WL 256107, *2 (S.D.N.Y. Feb. 3, 2009)).

## DISCUSSION

### I. Whether an Agreement to Arbitrate Exists

Defendant argues that the arbitration clause contained in the two offer letters constitute valid agreements to arbitrate between Lidl and Plaintiff. (Def.'s Mem., ECF No. 14 at 6–7.) Plaintiff argues that the offer letters do not contain clear and unequivocal agreements to arbitrate because (1) the arbitration clauses require "written acceptance" and (2) the offer letters merely provide a summary of the arbitration terms but do not constitute the company's actual arbitration agreement. (Pl.'s Mem., ECF No. 21 at 4–10.)

Arbitration agreements are treated as any other contract; thus, they are governed by state law principles of contract formation. *Schnabel v. Trilegiant Corp.*, 697 F.3d 110, 119 (2d Cir. 2012). It is "well settled" under New York law that arbitration will not be compelled absent the parties' "clear, explicit and unequivocal agreement to arbitrate." *Manigault v. Macy's E., LLC*, 318 F. App'x 6, 7–8 (2d Cir. 2009). "To form a contract in New York, there must be "an offer, acceptance, consideration, mutual assent and intent to be bound…A contract may be formed by words or by conduct that demonstrate the parties' mutual assent." *Pettersen v. Volcano Corp.*, No. 18-CV-03021(PKC)(PK), 2020 WL 6323937, at *3 (E.D.N.Y. Sept. 8, 2020), *report and recommendation adopted*, 2020 WL 6323122 (E.D.N.Y. Oct. 27, 2020) (citing *Manigault v. Macy's* E., LLC, 318 F. App'x 6, 8 (2d Cir. 2009)).

The Court finds that the arbitration clauses contained in the offer letters constitute valid agreements to arbitrate. The offer letters clearly state that Plaintiff's employment was conditioned on her acceptance of the Lidl's arbitration agreement. (Harry Decl., Ex. A, ECF No. 13-1 at 2 ("This offer is also contingent on your written acceptance of the Company's Arbitration Agreement.") They explain that "all disputes hereunder shall exclusively" be resolved according

5

to the "Employment Arbitration Rules & Mediation Procedures of the American Arbitration Association." (*Id.*) The language also advises Plaintiff that the arbitration shall take place in Arlington, Virginia or the state and county of her primary employment. (*Id.*) Defendant also shows that Plaintiff accepted the terms of the offer letters through electronic acceptance and that she commenced her employment at Lidl. (*Id.*, Ex. B, ECF No. 13-2; *id.*, Ex. D, ECF No. 13-4; Harry Decl., ECF No. 13 ¶ 10.) Thus, the Court finds that Defendant has met its *prima facie* burden of proving the existence of a valid agreement to arbitrate between the parties.

The burden thus shifts to Plaintiff to show that the agreement is invalid or unenforceable. Plaintiffs' primary argument is that the language in the offer letter suggests that the "Company's Arbitration Agreement" is in fact a separate agreement from the offer letter, which was never provided to Plaintiff and which she never signed. (Pl.'s Mem., ECF No. 21 at 9.) Plaintiff points to the fact that the "Company's Arbitration Agreement" is written in all capital letters. (*Id.* at 1.) Plaintiff also notes that the arbitration clauses says that the offer is "also contingent on your written acceptance of the Company's Arbitration Agreement", which contrasts with other conditions of the offer letter which use language such as, "By accepting this offer, you hereby represent and warrant…" to show that there was a separate formal arbitration agreement which was never provided to Plaintiff. (*Id.* at 6.) Plaintiff thus argues that Defendant's failure to supply Plaintiff with the separate arbitration agreement for her written signature, "indicates [Defendant's] abandonment of this supposed prerequisite of employment." (*Id.* at 2.)

Although the Court agrees that the wording of the arbitration language suggests the existence of a separate arbitration agreement, the language contained in the offer letters themselves is sufficient to evince the parties' agreement to arbitrate claims. *Etienne v. Barclays Bank*, No. 1:18-CV-05168 (ALC), 2019 WL 3325841, at *2 (S.D.N.Y. July 24, 2019) ("Courts consistently

compel arbitration of employment claims pursuant to valid arbitration agreements in offer letters.").

Additionally, the fact that Plaintiff never signed the arbitration agreement is also not dispositive. "The critical issue is not whether the charter party was signed by the party sought to be [c]harged…but whether there was a meeting of the minds of the parties as to the essential terms of the agreement, even though unsigned by one party." *A/S Custodia v. Lessin Int'l, Inc.*, 503 F.2d 318, 320 (2d Cir. 1974); *see also Nat'l City Golf Fin. v. Higher Ground Country Club Mgmt. Co., LLC*, 641 F. Supp. 2d 196, 203 (S.D.N.Y. 2009) (Under New York Law, [c]ourts…consistently… require that an agreement to arbitrate be in writing but not necessarily be signed by the party to be bound.")  The arbitration clauses contained in offer letters do more than just advise Plaintiff that there is a "Company[] Arbitration Agreement" that requires written acceptance.  As stated previously, the offer letters clearly advise Plaintiff that her employment was contingent upon agreeing to arbitrate her claims, explain in which forum any arbitration would take place, and advise Plaintiff of the arbitration procedures that would be used.  Moreover, Plaintiff assented to the terms of the arbitration clause when she electronically accepted the terms of the offer letter through Lidl's human resources portal and when she commenced her employment at Lidl.  *See Beth Israel Med. Ctr. v. Horizon Blue Cross & Blue Shield of N.J., Inc.*, 448 F.3d 573, 582 (2d Cir.2006) ("Under New York law, the conduct of the parties may lead to the inference of a binding agreement."); *see also Dixon v. NBCUniversal Media, LLC*, 947 F. Supp. 2d 390, 400 (S.D.N.Y. 2013) ("Under these circumstances, [plaintiff's] continued employment beyond July 1, 2009 constituted acceptance of the binding arbitration agreement contained in the 2009 Manual.")

Plaintiff also argues that the offer letter disclaims any contractual nature.  The Court disagrees.  The offer letters state that they are not "contract[s] of employment for any definite

period of time." (Harry Decl., Ex. A, ECF No. 13-1 at 1.) However, this language does not indicate that the offers letters have *no* contractual value, but merely explains that Plaintiff would be an employee "at-will", meaning that either party could terminate her employment at any time for any reason. (*Id.*) For these reasons, the Court finds that the parties entered into a valid and enforceable agreement to arbitrate.

## II.     Scope of the Arbitration Clauses

Next, the Court turns to whether the claims in the instant dispute fall within the scope of the parties' agreement to arbitrate. Courts must apply "standard principles of contract interpretation to determine whether the arbitration agreement unambiguously 'cover[s] the dispute in question.'" *University Consultation and Treatment v. Local 1199 United Healthcare*, 2015 WL 9077249, at *2 (S.D.N.Y. Dec. 16, 2015). As a threshold question, the Court must determine whether the arbitration clause is broad or narrow. *See Mehler v. Terminix Int'l Co.*, 205 F.3d 44, 49 (2d Cir. 2000). "If reviewing a narrow clause, the court must determine whether the dispute is over an issue that "is on its face within the purview of the clause, or over a collateral issue that is somehow connected to the main agreement that contains the arbitration clause." *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 224 (2d Cir. 2001) (internal quotations and citations omitted). "Where the arbitration clause is broad, there arises a presumption of arbitrability and arbitration of even a collateral matter will be ordered if the claim alleged implicates issues of contract construction or the parties' rights and obligations under it." *Id.* (internal quotations and citations omitted).

Defendant argues that the arbitration clauses are broad, giving rise to a presumption of arbitrability. (Def.'s Mem., ECF No. 14 at 7–8.) Plaintiff, on the other hand, argues that the

arbitration clauses are narrow and apply only to disputes arising from the offer letters themselves. (Pl.'s Mem., ECF No. 21 at 13–14.)

The Court finds that under either a broad or narrow reading of the arbitration clauses, Plaintiff's claims fall within the scope of the agreement. Plaintiff argues that even if the language in the offer letters is construed as a valid arbitration agreement, the scope of that agreement does not include Plaintiff's wage and hour claims as asserted in the Complaint. (Pl.'s Mem., ECF No. 21 at 13–15.) Specifically, Plaintiff argues that the language in the letter stating that "all disputes *hereunder* shall be exclusively resolved by final and binding arbitration", means that the only arbitrable disputes are those arising from the offer letter itself. (*Id.* (citing Harry Decl., Ex. A, ECF No. 13-1 at 2) (emphasis added).) Plaintiff has brought wage and hour claims pursuant to the FLSA and NYLL, alleging, *inter alia*, that Defendant failed to pay her for all wages and overtime due because of Defendant's alleged time-shaving practices. (*See generally*, Compl., ECF No. 1.) The offer letters expressly notify Plaintiff of her hourly pay rate of $15.25 per hour and notify her that she would be subject to the overtime provisions of the FLSA. (Harry Decl., Ex. A, ECF No. 13-1 at 1.) In other words, even if the arbitration clauses are cabined to only those claims arising from the offer letters themselves, Plaintiff's wage and hour claims would be squarely encompassed by them. Furthermore, Plaintiff's claims would also be subject to arbitration under a broad reading of the scope of the arbitration clauses, given the presumption of arbitrability that arises from such clauses. *See Catz v. Precision Glob. Consulting*, No. 19 CIV. 7499 (ER), 2021 WL 1600097, at *8–*9 (S.D.N.Y. Apr. 23, 2021). Accordingly, Defendant's motion to compel arbitration is granted.

### III.     Plaintiff's Collective Action Claims

Defendant asks the Court to compel arbitration as to Plaintiff's claim only as to her individualized claims, and not her claims on a collective action or class-wide basis. (Def.'s Mem., ECF No. 14 at 9.) Plaintiff does not address this argument in her response papers.

The Second Circuit has held that certain "gateway" questions concerning the arbitrability of a claim are properly decided by the court, absent clear guidance in the arbitration agreement authorizing the arbitrator to decide those issues in the first instance. *Wells Fargo Advisors, LLC v. Sappington*, 884 F.3d 392, 395 (2d Cir. 2018). Additionally, the Supreme Court has held that a party "may not be compelled…to submit to class arbitration unless there is a contractual basis for concluding that the party agreed to do so." *Anwar v. Fairfield Greenwich Ltd.*, 950 F. Supp. 2d 633, 636 (S.D.N.Y. 2013) (citing *Stolt–Nielsen S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 130 S.Ct. 1758, 1775, 176 L.Ed.2d 605 (2010). Thus, an agreement to arbitrate alone, absent an explicit agreement to arbitrate claims on a class-wide basis, does not constitute "an implicit agreement to authorize class action arbitration…" (*Id.*) Here, the arbitration clauses are silent as to whether the parties agreed to arbitrate claims on a class wide basis. Accordingly, Defendant's motion to compel arbitration on an individualized basis is granted. *See Anwar*, 950 F. Supp. 2d at 636–637. ("[A]n agreement to arbitrate "any and all disputes, controversies, or claims arising out of" that agreement does not in and of itself authorize class arbitration if there is "no provision in the contract which contemplates class-arbitration.") (quoting *Sanders v. Forex Capital Mkts., LLC*, No. 11-CV-864, 2011 WL 5980202, at *11 (S.D.N.Y. Nov. 29, 2011)).

## CONCLUSION

For the foregoing reasons, the Court grants Defendant's motion to compel arbitration on an individual basis and stays Plaintiff's remaining claims in favor of arbitration. The parties are

directed file rolling status updates regarding the arbitration every 90 days.  The Clerk of Court is respectfully directed to terminate the motion at ECF No. 11 and mark this case as stayed.

**SO ORDERED.**

**Dated: March 29, 2023**
**New York, New York**

_____
**ANDREW L. CARTER, JR.**
**United States District Judge**